HOLLAND & KNIGHT LLP
Vito A. Costanzo (SB# 132754)
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Telephone: (213) 896-2400
Facsimile:   (213) 896-2450

Attorneys for Defendant
THE ONEIDA GROUP, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TUXTON CHINA, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE ONEIDA GROUP, INC., <br><br> Defendant. | Case No. 2:17-CV-02996-SVW-E <br><br> **DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** <br><br> Date:  September 11, 2017 <br> Time:  1:30 a.m. <br> Room:  10A <br>         First Street Courthouse <br><br> Judge:  Hon. Stephen V. Wilson |

## I. INTRODUCTION

Tuxton filed an anticipatory lawsuit three days after telling Oneida that it needed more time to respond to Oneida's cease and desist letter. Tuxton now claims that this is not an anticipatory lawsuit, that the first-to-file rule should not apply and that it should be permitted to seek declaratory judgment rather than waiting for Oneida to initiate suit. In making these arguments, Tuxton seeks to gain an advantage following its race to the courthouse. This effort should be rejected and Tuxton's ill-conceived case should be dismissed.

## II. ARGUMENT

### A. Tuxton Understood Litigation Was Imminent

Tuxton argues that this action is not an "anticipatory" lawsuit because it did not file suit after receiving "specific, concrete indications that a suit by defendant was imminent". Opp, 9:17-20, *citing Ward v. Tollet Corp.*, 158 F.R.D. 645, 648 (N.D. Cal. 1994). Tuxton's argument is belied by its own actions. Tuxton received a letter from Oneida dated April 7, 2017, stating clearly that Oneida would take "formal action" if it did not receive written assurances from Tuxton by April 17, 2017 that it would end its infringement. Exh. "2" to Decl. of Ashlee Lin.

Tuxton waited until the April 17, 2017 deadline before sending an e-mail stating that it would provide a substantive response no later than the "end of next week", *i.e.*, by April 28, 2017. Tuxton stated that it required this time in order to "thoroughly investigate" the matter:

> "As I have only just received the letter, and as certain of my client's principals are currently abroad, we will not be able to respond to your letter by the date set forth therein (April 17, 2017). However, we are endeavoring to thoroughly investigate the issues you have raised and

will provide you with a substantive response by the end of next week".

Exh. 3 to Decl. of Ashlee Lin.

However, Tuxton evidently did not need time to "thoroughly investigate the issues" before filing this action, which was filed only three days after the above-quoted e-mail. This is because it was obviously clear to Tuxton that it needed to beat Oneida to the courthouse.

Tuxton cites *Easton-Bell Sports, Inc. v. E.I. Dupont Nemours & Co.*, 2013 WL 1283463 (N.D. Cal. March 26, 2013) for the proposition that a cease and desist letter following the granting of additional time to provide a response are not indicative of an imminent suit. However, the facts of the *Easton-Bell* case indicate equivocal intentions which are far different from the instant facts. The court in *Easton-Bell* discussed that "never ending extensions" and expressions of a desire to settle are not indicative of imminent legal action:

> For example, in December 2012, DuPont's counsel stated in a letter to Easton-Bell that "If we cannot get your cooperation . . . I have been instructed to take all necessary legal remedies and actions . . . including instituting civil actions. . ."; "If I do not hear from you, I have been asked to commence legal action. . . ." Dkt. No. 8-6 at 27. In that same letter, DuPont also indicated that it "look[ed] forward to a speedy and amicable final resolution." Id. at 26. Moreover, DuPont told Easton-Bell three times that it could respond by a later date than first imposed by DuPont: first, it was comply by January 4, then by January 11, then by January 16, and finally by January 23. Dkt. No. 8-4 at 2-4. In fact, on January 18, 2013—two days after the then-current deadline had expired and without any communication from Easton-

Bell—DuPont's counsel granted the third extension and stated "We are following up with you as our deadline has lapsed . . . . If we do not hear from you by [January 23, 2013], this case would then be a willful infringement." Id. at 2 (emphasis added). These never-ending extensions do not give specific, concrete indications that suit was imminent. Furthermore, each communication reiterated that DuPont was "hopeful for an amicable resolution," id. at 2-3, language which the court in Intersearch found failed to give specific, concrete indications that a suit was imminent, 544 F. Supp. 2d at 961.

Id. at * 5.

In contrast, this case does not involve repeated expressions of a desire to settle and "never-ending extensions". This case is far different. Tuxton contacted Oneida on the last day of the deadline, stating that it was investigating matters and would respond ten days later. Tuxton then filed suit within three days. There can be no doubt that Tuxton knew Oneida would file suit if Tuxton did not beat Oneida to it. This is clearly an anticipatory lawsuit.

### B. The First-to-File Rule is Not Mechanically Applied.

Tuxton argues that the first-to-file rule does not apply here because the Steelite case does not involve the same parties or the same issues. In making this argument, Tuxton seeks to impose an inflexible interpretation of the rule. However, "[t]his "first to file" rule is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 67 F. 2d 93 (9th Cir. 1982).

In applying the first to file with using sound judicial discretion, the court in *Dumas v. Major League Baseball Properties, Inc.*, 52 F. Supp. 1183 (S.D. Cal. 1999) stated that, when evaluating the identity of the parties, the court must be afforded some flexibility:

> This "substantial overlap" rule better forwards the need "to avoid the waste of duplication, to avoid rulings which trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." (citations omitted.) The policy arguments regarding identity of parties are persuasive. If the first-to-file rule required identical parties, these interests would not be fully forwarded. This flexibility also comports with case law holding that the first-to-file rule is not to be applied mechanically, rigidly, or inflexibly.

*Id.* at 1189-90.

The Court herein is similar vested with the discretion not to apply the first to file rule mechanically, rigidly or inflexibly. Oneida filed the New York action containing substantially similar issues involving the BOTTICELLI® trade dress two months prior to the instant litigation and should be afforded the opportunity to address these claims there. In fact, Steelite has made claims with regard to the Tuxton's PACIFICA design in the New York Action. Exh. "1" to Decl. of Ashlee Lin, 11-12. The parties are also sufficiently similar, insofar as Tuxton and Steelite stand in the same position with respect to their relationship with Oneida.

Accordingly, a strict application of the first-to-file rule is unjustified here, especially in view of the fact that Tuxton would have been a party to the New York action but for its anticipatory lawsuit.

### C. The Declaratory Judgment Act.

Tuxton argues that it should not be forced to await the "initiative of the antagonist" before instituting a declaratory judgment action. Opp. 7:25-28. Tuxton further points to the goal of the Declaratory Judgment Act to "expediently adjudicate the issues presented . . . rather than engage in protracted discussions which may not result in resolution." Opp., 8:1-3.

Tuxton then compares this matter to the *Chesebrough Pond's* case, wherein the plaintiff had a "real and reasonable apprehension that he will be subject to liability". Opp., 8:6-10. Accordingly, Tuxton claims that filing declaratory relief was justified because the "threat perceived by the plaintiff is real". Opp., 8:11-12.

Tuxton's claims of apprehension and threat are contradicted by its actions following receipt of Oneida's cease and desist letter. There was no danger of a protracted discussion or lack of initiative by Oneida. Instead, Tuxton first asked for more time and then filed suit 3 days later. There was no uncertainty here. Tuxton raced to the courthouse with an anticipatory lawsuit and now claims that it should not have been required to await the "initiative of the antagonist".

### III. CONCLUSION

Tuxton seeks to gain an advantage herein because it was able to immediately file this action following its request for more time to respond to Oneida's cease and desist letter. This effort should be rejected and this matter should be dismissed.

Dated: August 25, 2017        HOLLAND & KNIGHT LLP

By: /S/ Vito A. Costanzo
Vito A. Costanzo
Attorneys for Defendant
THE ONEIDA GROUP, INC.

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed electronically on this 25th day of August, 2017 with the Court by using the CM/ECF system, which will send notification of such filing to all attorneys of record.

/s/ Helen Pipersburgh
Helen Pipersburgh

#52339159_v1